# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY D. LEISER,**

    **Plaintiff,**

v.                             Case No. 21-CV-405

**WARDEN MICHAEL MEISNER,
DEPUTY WARDEN ERIC BARBER,
C. KARSCHENY, JOHN DOE OFFICERS,
JANE DOE OFFICERS, STAFF TEACHERS,
STAFF SOCIAL ORDERS, and JOHN AND
JANE DOE CAPTAINS AND LIEUTENANTS,**

    **Defendants.**

## ORDER

Plaintiff Jeffrey D. Leiser, who is incarcerated at Red Granite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (ECF No. 1.) This order screens his complaint.

The court has jurisdiction to screen the complaint in light of Leiser's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. **Screening of the Complaint**

    *1.1 Federal Screening Standard*

    Under the PLRA the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

    In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

    To state a claim for relief under 42 U.S.C. § 1983 a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the

United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2   Leiser's Allegations

On July 16, 2019, between 12:30 p.m. and 1:30 p.m., staff at Red Granite Correctional Institution announced that they were conducting an "Emergency Count" and ordered all inmates to return to their cells. (ECF No. 1, ¶ 20.) Once all inmates were in their cells, a staff member distributed a memo from defendant Warden Michael Meisner that indicated that the housing unit, "E unit", is on "complete lockdown for the purpose of conducting a search of the building and property." (*Id.*, ¶ 2.) This meant that inmates had to take all meals in their cell, would only be allowed out to shower once a day, and could not move outside their cell without an escort. (*Id.*) There was also a suspension of all administrative rules. (*Id.*)

The lockdown lasted two-and-a-half days, and every time Leiser needed to leave his cell to use the bathroom or shower he was strip-searched leaving his cell and patted down upon coming back to his cell. (ECF No. 1, ¶ 5.) Leiser estimates that he was strip searched between 30 and 50 times during that two-and-a-half day

3

period, often in front of female staff members. (*Id.*, ¶¶ 6, 23.) He states the strip searches were "maliciously motivated" and conducted in a "harassing manner." (*Id.*)

Leiser has a "neurogenic bladder, which causes extreme pain when he is forced to hold his urine." (ECF No. 1, ¶ 7.) Because of the strip search requirement, Leiser on two occasions had to wait to urinate. (*Id.*) One time he had to wait an hour and a half and on another occasion he had to wait three hours. (*Id.*) Leiser also suffers from nerve impingement in his spine and being forced to remove his clothes caused him pain. (*Id.*, ¶ 7.) Leiser informed staff of his conditions, but he states they did not care and told him to "deal with it." (*Id.*, ¶¶ 23-24.)

Also, during the two-and-a-half day lockdown, between July 16, 2019, and July 19, 2019, the temperature was over 95 degrees with high humidity. (ECF No. 1, ¶ 26.) The cells became hot and stuffy and a Jane Doe Sergeant would not allow Leiser to open his door to allow for cooler air to flow in. (*Id.*) Staff also did not turn on "the air induction system," which would have facilitated air flow. (*Id.*, ¶ 27.) The fans located in the housing unit's day room were used to keep staff cool but not the inmates. (*Id.*, ¶ 28.) Leiser seeks $100,000 in damages from each defendant.

*2.3    Analysis*

Leiser clams that the defendants violated his Eighth Amendment rights when they subjected him to several strip searches, made him wait to urinate, and kept his cell at unreasonably high temperatures. Regarding his claim concerning the strip searches, prison officials "violate the Eighth Amendment when they treat inmates in a way that is 'motivated by a desire to harass or humiliate' or 'intended

4

to humiliate and cause psychological pain.'" *Chatman v. Ill. Dept. of Corr.*, 685 Fed. A'ppx 487, 489 (7th Cir. 2017) (quoting "*King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015)). "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). "[T]o state an Eighth Amendment claim [a plaintiff] must show that the strip search in question was not merely a legitimate search . . . but instead a search conducted in a harassing manner." *Id.*

While Leiser states that the searches were conducted solely for malicious purposes and to harass inmates, he does not offer any allegations that demonstrate that the searches were intended to harass. Instead, his allegations suggest that the strip searches were conducted for a legitimate penological purpose. The strip searches were part of a lockdown designed to facilitate a search of the building and property. Clearly, the RGCI officials were looking to uncover contraband. Leiser states that the strip searches were harassing because they were conducted in front of female staff members; because they were conducted every time an inmate needed to leave his cell; and because they caused him pain.

None of these allegations are sufficient to state a claim under the Eighth Amendment. A strip search of a male prisoner in front of female prison officers "if conducted for a legitimate penological purpose, would fail to rise to the level of an Eighth Amendment violation." *Calhoun*, 319 F. 3d at 939. Also, conducting a strip search every time an inmate needed to leave his cell served a legitimate penological

5

purpose given that the purpose of the lockdown was to uncover and prevent destruction of contraband. Without the searches, an inmate harboring contraband may have been able to smuggle it out. While it is unfortunate that having to undress several times a day aggravated Leiser's impinged nerve, Leiser does not allege that the officers made him strip solely to inflict that pain upon him. As such, Leiser may not proceed on an Eighth Amendment claim for the strip searches.

However, he may proceed on an Eighth Amendment claim against the John and Jane Doe prison officers who made him wait to urinate. Leiser alleges two specific occasions where the officers knew he had a neurogenic bladder and that it would cause him extreme pain to wait to urinate. But they made him wait anyway. At this stage, these allegations sufficiently suggest "conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Additionally, Leiser may proceed on an Eighth Amendment conditions of confinement claim for the high temperatures and poor ventilation that Sergeant Jane Doe and John and Jane Doe officers subjected him to. *See White v. Monohan*, 326 Fed. A'ppx 385, 387-88 (7th Cir. 2009) (holding that a plaintiff states a claim when he alleges extreme cell temperatures resulting from poor ventilation).

Leiser may not proceed on claims against of the defendants he named—Warden Meisner, Deputy Warden Eric Barber, and C. Karschney. He does not state any allegations against them. As such, he does not state a claim against them. At most, for Warden Meisner Leiser's allegations could imply a claim under a theory of

6

supervisor liability. However, supervisors can be held liable for constitutional violations caused by their employees only where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* At most, Leiser alleges that Warden Meisner knew about the lockdown because he imposed it, but he does not allege that Meisner knew he was being forced to wait to urinate or that the cell temperatures were extremely warm.

Thus, Leiser may proceed on claims against three sets of John and Jane Doe defendants: 1) the John and Jane Doe officers that made him wait three hours to urinate; 2) the John and Jane Doe officers that made him wait an hour and a half to urinate; and 3) the Jane Doe Sergeant and the John and Jane Doe officers who subjected him to high temperatures in the cell by either not turning on the ventilation system or failing to take other measures to keep temperatures reasonable. All other John and Jane Doe defendants are dismissed because Leiser does not state a claim against them. Deputy Warden Eric Barber, and C. Karschney are similarly dismissed.

Because the only remaining defendants are John and Jane Doe defendants, the court does not dismiss Warden Meisner but will keep him as a defendant for the limited purpose of helping Leiser identify the names of the Doe defendants. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). Meisner does not have to respond to the complaint. After Meisner's attorney files an

7

appearance in this case, Leiser may serve discovery upon Meisner (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the Doe defendants.

For example, Leiser may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because Leiser does not state a claim against Meisner, Leiser's discovery requests must be limited to information or documents that will help him learn the real names of the Doe defendants he is suing. Leiser may not ask Meisner about any other topic, and Meisner is under no obligation to respond to requests about any other topic.

After Leiser learns the names of the people he alleges violated his constitutional rights, he must file a motion to identify their names to replace the John and Jane Doe placeholders. The court will dismiss Meisner as a defendant once Leiser identifies the defendants' real names. After the defendants have an opportunity to respond to Leiser's complaint, the court will set a deadline for discovery. At that point, Leiser may use discovery to get the information he believes he needs to prove his claims.

Leiser must identify the names of the Doe defendants within sixty days of Meisner's attorney appearing. If he does not, or does not explain to the court why he is unable to do so, the court may dismiss his case based on his failure to follow its order.

**2. Conclusion**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Deputy Warden Eric Barber, C. Karschney, Staff Teachers, Staff Social Workers, and the John and Jane Does not named in the Eighth Amendment claims Leisner was allowed to proceed on are **DISMISSED**.

**IT IS FURTHER ORDERED** that Warden Michael Meisner shall remain as a defendant for the limited purpose of helping Leiser identify the remaining John and Jane Doe defendants' names.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Warden Michael Meisner.

**IT IS FURTHER ORDERED** that Warden Meisner does not have to respond to the complaint; however, he shall respond to discovery requests that Leiser serves in an effort to identify the Doe defendants' names. Warden Meisner does not have to respond to discovery requests about any other topic.

**IT IS FURTHER ORDERED** that Leiser must identify the Doe defendants' names within sixty days of Warden Meisner's attorney filing an appearance in this case. If Leiser does not identify the Doe defendants' names by the deadline or advise the court why he is unable to do so, the court may dismiss this case based on his failure to follow the court's order.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Leiser is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Leiser is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Leiser's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Questions," this guide contains information that Leiser may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin this 3rd day of June, 2021.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge